**Casimir Bernard ROBERTS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–00360–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 14, 2000.

Allen C. Isbell, Houston, for Appellant.

Alan Curry, John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, WILSON, and NUCHIA.

## OPINION

DAVIE L. WILSON, Justice.

A jury found appellant Casimir Bernard Roberts guilty of possession with intent to deliver cocaine weighing one gram or more, but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon Supp.2000). Appellant pleaded true to two prior convictions for possession of cocaine. The trial court assessed punishment at 35–years imprisonment. In two points of error, appellant contends the trial court improperly admitted evidence of prior uncharged offenses, and the trial court erred in overruling his motion for mistrial. We reverse.

## Facts

After obtaining a search warrant, Houston Police Department narcotics officers battered down the door of a motel room.

On entering the room, Officer Paul Steffenauer testified he saw appellant in the bathroom, bending over the toilet. Officer Steffenauer found swirling water in the toilet and recovered approximately 14 cocaine rocks that were on top of feces. Also in the motel room were Patsy Marks and her two children, and Prentis Bester and Kimberly Taylor, who were babysitting the children. Marks testified for the defense that she rented the motel room, that appellant was the father of her two children, that Bester immediately went into the bathroom when the police began battering down the door, and that appellant was not in the bathroom during the entire time of the police raid.

Before trial, appellant requested that the State give him notice if it intended to introduce evidence of prior uncharged offenses in its case-in-chief, as provided in Texas Rule of Evidence 404(b). The State never notified appellant that it intended to use evidence of prior uncharged offenses in its case-in-chief.

Officer Steffenauer testified as a rebuttal witness for the State, and over appellant's objection, that he observed appellant for two weeks before the raid. Two days before the raid, he observed unknown persons knock on the motel room door. In each case, appellant came out and handed the person an unknown object in exchange for cash. Officer Matthew Abowd testified as a rebuttal witness for the State that he also participated in surveillance of appellant, but Abowd never observed appellant accept money from other people.

### Discussion

In his first point of error, appellant contends that the trial court erred by admitting, under the guise of "rebuttal evidence," testimony from the narcotics officers of activity they observed during their surveillance of appellant, suggesting appellant's involvement in previous narcotics offenses. The State claimed at trial that it was attempting to introduce this evidence to rebut Marks' testimony that (1) indicated the cocaine belonged to Bester and (2) appellant was not at the motel two days before the arrest. Appellant argued at trial that the evidence should have been excluded because it was not proper "rebuttal" evidence and it would be inadmissible in the State's case-in-chief because the State did not give appellant the notice required by Texas Rule of Evidence 404(b).

The following discussion occurred at trial outside the jury's presence:

[THE STATE]: Judge, it's our position we would like to call Officer—Officers Abowd who set up surveillance on this motel room in the two weeks prior to the incident here and recall Officer Steffenauer to testify to the fact that during this surveillance they saw numerous hand-to-hand transactions with the [appellant] and other individuals at this location out of this hotel room. In other words, individuals coming to this hotel room and the [appellant] involved in hand-to-hand transactions with him at that location. In addition, Officer Abowd can testify to the fact that he was working with a confidential informant. The confidential informant bought crack cocaine from this [appellant] at this location two days prior to this incident, which is October the 6th, last year, and was the basis for the search warrant in this case.

This witness has testified that—two different things. First, that the [appellant] wasn't there on that day and, in addition—on the 6th, excuse me, and in addition, that it was someone else, or at least they put the argument into evidence, the theory being that it was Prentis Bester's cocaine and not the [appellant's].

Extraneous offenses are admissible to refute a defensive theory, and the Court may instruct the jury that they are only to be considered for that. . . .

[APPELLANT'S COUNSEL]: Judge, my response is, first of all, I did

not elicit any of that on my direct. The State themselves set her up to try to impeach her and opened the door themselves. I didn't open any door on any issue about—other than him coming by and picking up the children. All the questions that were asked about whether they had been there the day before or the 6th were all asked by the State.

Case law is long and numerous that the State cannot benefit from their own impeachment process. They cannot ask a question on cross so they can come back later on rebuttal to rebut what they elicited. I didn't elicit that, they did. And it's totally irrelevant as to the issue at hand.

I filed a Motion for Disclosure of the informant in this case, and it was denied. Moreover, Judge, the only controversy here is that my client has disagreed with the officer as to what he saw, that is, as to who walked out of the bathroom.

The Officers said that my client walked out of the bathroom. She says, no, it was Prentis that walked out of the bathroom. So as to the subject matter of the indictment here, what my client may have done previously has no bearing here. . . .

. . . .

[APPELLANT'S COUNSEL]: Judge, my other response is, I made specific requests for notice of extraneouses for the State to give me. I have never been given notice. Today is the first time I received any notice of these extraneous offenses. The only thing that was listed in the offense report that could even be close to an extraneous, Judge, is the officer stated that he had previously set up surveillance on the location, observed the [appellant] to be staying at the hotel room on several dates. That's the only thing he says in the offense report.

And the only notice that the State gave me, Judge, as to extraneous is that which they have listed on file. And I would say it would be—I'm still taking the position we haven't opened any doors to admit it; but even if the Court believes, they have not given me proper notice pursuant to my request of any extraneous offenses. I'm surprised, totally caught off-guard, totally cannot prepare an adequate response to these; and the prejudicial harm would outweigh any probative value.

[THE STATE]: My response to that, Judge, under the Rules of Evidence, Texas Rules of Evidence, notice is not required if evidence—prior bad act evidence, which is what this is, was brought out by the defensive theory. And that is what we are claiming here, that because of the testimony of Miss Marks, we should be allowed to put that on. Therefore, there is—we should not be held up by that notice provision.

The trial court overruled appellant's objection and allowed the two officers to testify concerning appellant's prior bad acts.

It is undisputed that the State did not give appellant notice, before trial, of the State's intent to introduce the extraneous-offense evidence in its case-in-chief, as required by Texas Rule of Evidence 404(b). The issue presented is whether the extraneous-offense evidence was properly admitted as rebuttal evidence.

■ The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State*, 810 S.W.2d 372, 378 (Tex.Crim.App.1990). Accordingly, the trial court's admission of evidence is reviewed under an abuse of discretion standard. *See id.* at 379–80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the trial court's ruling. *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim.App.1996); *Montgomery*, 810 S.W.2d at 391.

■ To prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of extraneous offenses similar to

the offense charged. *Montgomery*, 810 S.W.2d at 387. However, as an exception to the general rule of exclusion, evidence of "other crimes, wrongs, or acts" may be admissible if it has relevance to a material issue other than to show that the accused acted in conformity with some trait of character and the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice." *Montgomery*, 810 S.W.2d at 387; Tex.R. Evid. 403, 404(b). If the defendant objects on the grounds that the evidence is not relevant to a material issue, violates rule 404(b), or constitutes an otherwise inadmissible extraneous offense, the State must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value. *Montgomery*, 810 S.W.2d at 387. If the trial court determines the evidence has no relevance apart from supporting the conclusion that the defendant acted in conformity with his character, it is absolutely inadmissible. *Id.* Extraneous offense evidence is relevant apart from showing character conformity if the proponent shows that it "tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident .... [or] that it is relevant upon a logical inference not anticipated by the rulemakers." *Montgomery*, 810 S.W.2d at 387–388; *see also Taylor v. State*, 920 S.W.2d 319, 321 (Tex.Crim.App.1996).

Extraneous offense evidence may be relevant and admissible to rebut a defensive theory. *See Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994). "Rebuttal of a defense means evidence is introduced contradicting some aspect of the defense itself...." *Celeste v. State*, 805 S.W.2d 579, 581 (Tex.App.—Tyler 1991, no writ) (quoting *Boutwell v. State*, 719 S.W.2d 164, 180 (Tex.Crim.App.1985)). When a defense witness presents a picture

that the defendant is not the type of person to commit the charged offense, the prosecution may impeach the defense witnesses' testimony by introduction of similar extraneous offenses. *See McIlveen v. State*, 559 S.W.2d 815, 822 (Tex.Crim.App. 1977); *Mares v. State*, 758 S.W.2d 932, 936 (Tex.App.—El Paso 1988, pet. ref'd). By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial. *See Bell v. State*, 620 S.W.2d 116, 126 (Tex.Crim. App.1980). As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not by elicited by "prompting or maneuvering" by the State. *See Shipman v. State*, 604 S.W.2d 182, 185 (Tex.Crim.App.1980); *Mares*, 758 S.W.2d at 936. However, as an exception to this general rule, when a defendant voluntarily or nonresponsively testifies concerning extraneous matters on cross-examination, the State may correct any false impression presented by such answer. *See Martinez v. State*, 728 S.W.2d 360, 361–62 (Tex.Crim.App.1987); *Mills v. State*, 847 S.W.2d 453, 456 (Tex.App.— Eastland 1993, pet. ref'd); *Burrow v. State*, 668 S.W.2d 441, 443 (Tex.App.—El Paso 1984, no pet.).

Appellant contends that the State cannot justify admission of the officers' testimony as rebuttal evidence to Marks' testimony that appellant was not at the motel on October 6 because the State elicited this testimony on cross-examination. Marks did not volunteer this testimony. We agree. The officers' testimony, therefore, was not admissible to correct a false impression about appellant's presence at the motel on October 6. *See Lopez v. State*, 928 S.W.2d 528, 531–32 (Tex.Crim.App.1996).

The State additionally argued that the extraneous-offense evidence was admissible to refute Marks' testimony that Bester,

not appellant, was in the bathroom, indicating that the cocaine in the toilet belonged to Bester and not appellant. The State relies on cases discussing offers of extraneous-offense evidence during the State's case-in-chief to show a defendant's intent and knowledge. These cases are inapplicable here because the State did not give appellant the notice required by Texas Rule of Evidence 404(b). In this case, the State could not, and did not, introduce the extraneous-offense evidence during its case-in-chief.

Marks' direct testimony that Bester, instead of appellant, was in the bathroom when the police entered merely contradicted Officer Steffenauer's testimony. Marks' testimony indicated that someone else besides appellant possessed the cocaine; her testimony did not place in issue whether appellant had the requisite intent or knowledge to make his alleged possession of cocaine an offense. We hold that Marks' testimony did not open the door to the State's offered rebuttal testimony to show intent or knowledge. *See Nelms v. State,* 834 S.W.2d 110, 113–14 (Tex.App.— Houston [1st Dist.] 1992, pet. ref'd) (evidence of prior drug dealing was not relevant to issue in case—whether defendant or another person actually possessed the cocaine—and introduction of evidence prejudiced jury by referring to extraneous matters for which defendant was not on trial). Accordingly, the trial court erred in admitting the extraneous-offense evidence.

■■■■■ We now consider whether the error constitutes reversible error under Texas Rule of Appellate Procedure 44.2, *i.e.,* did the error affect appellant's substantial rights. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Appellant argues the trial court's error had a substantial and injurious influence on the jury's determination of its verdict because it permitted the State to suggest that appellant sold drugs on more than one occasion. To determine whether the trial court's error had such an effect, we must examine the error in relation to the entire proceedings. *See King,* 953 S.W.2d at 271. In light of the fact that the only evidence linking appellant to the cocaine was Officer Steffenauer's testimony that he saw appellant in the bathroom, bending over the toilet, and that this evidence was contested, we hold that the erroneously admitted evidence of prior uncharged offenses had a substantial and injurious influence on the jury's determination of its verdict. We so hold because the erroneously admitted evidence undermined the only witness on whom appellant relied to refute Officer Steffenauer's testimony and because the erroneously admitted evidence tempted the jury to find appellant guilty on the basis of character conformity, which rule 404(b) expressly prohibits. Finally, we note that the trial court did not give a limiting instruction to the jury concerning the erroneously admitted evidence.

We sustain point of error one. In light this ruling, we do not reach point of error two.

### Conclusion

We reverse the trial court's judgment and remand the case to that court for a new trial. *See* TEX.CODE CRIM. P. ANN. art. 44.29 (Vernon Supp.2000).