Opinion issued October 6, 2011. 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-01089-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JAMES MUSGROVE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 23rd District Court

 Brazoria County,
Texas

Trial Court Cause No. 59240

 

 



MEMORANDUM OPINION

A jury convicted James Musgrove, a prison inmate, of the
offense of unlawful restraint of a public servant.  See Tex. Penal Code Ann. § 20.02 (a), (c)(2)(B)
(West 2011).  It assessed his punishment
at six years’ confinement.  On
appeal, Musgrove contends that the trial court erred in (1) allowing the State
to introduce statements that he made to medical personnel in a prison hospital
after the offense, and (2) denying his motion for a new trial, because the
presence of TDCJ guards during the trial inherently prejudiced the jury against
him.  We hold that the trial court did
not abuse its discretion in admitting Musgrove’s statements to medical
personnel or in denying his motion for a new trial.  We therefore affirm.

Background

In November 2006, Michial Lawrence, a
correctional officer at the Stringfellow Unit, escorted Musgrove and another
inmate to work in the prison’s laundry building.  Once there, Musgrove created a disturbance,
gained control of Lawrence’s pepper spray canister, and used it to spray
Lawrence and the other inmate.  The other
inmate rushed out of the building to seek help. 
Musgrove then cut his own throat and wrists with razor blades in an
attempt to commit suicide.  Several
correctional officers entered the building, found Lawrence and Musgrove injured,
and requested medical assistance.  

Shortly after the incident, medical
personnel evaluated Musgrove at a correctional mental health hospital.  As part of the intake process, Sharon Parker,
a physician’s assistant employed by the University of Texas Medical Branch,
Correctional Managed Care, conducted an initial psychiatric evaluation.  During the evaluation, she asked Musgrove to describe
his patient history.  He responded that
he was depressed.  He told her that he had
attempted to commit suicide on the day of the incident with Lawrence.  Musgrove’s plan was to use pepper spray on
Lawrence and tie Lawrence up so that he could kill himself without
interference.  Musgrove told Parker that his
plan did not work out.  He cut himself,
but other guards came into the room too quickly.  

At trial, the
State offered Musgrove’s medical records, including Parker’s psychiatric
evaluation, into evidence.  Musgrove
objected to the admission of the evaluation on the ground that it contained a
statement made by him while he was in the custody and control of TDCJ without
the warnings Article 38.22 of the Code of Criminal Procedure requires.  See Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).   The trial court overruled Musgrove’s
objection and admitted the records.

Also at trial,
Musgrove objected to the number of uniformed correctional officers present in
the courtroom.  The trial court denied
Musgrove’s objection, indicating that two uniformed officers were present.  The State noted for the record that officers
inside the bar were in plainclothes, and that all uniformed officers were
outside the bar.  Musgrove said that one
uniformed officer was inside the bar.  The
record does not indicate the total number of correctional officers present, but
reveals that the trial court had security concerns because Musgrove and TDCJ
officers had an altercation two days earlier outside the courtroom.  

After the
jury found Musgrove guilty, Musgrove moved for a new trial based on the
presence of the officers.  In his motion for
new trial, Musgrove offered an affidavit, in which he avers that six TDCJ
officers were present at his trial, three in uniform, and the others in
plainclothes.  The trial court denied his
motion.  

Discussion

Admission of Psychological Evaluation 

Musgrove contends that the trial
judge erred in admitting Parker’s evaluation on the ground that it was a
product of a custodial interrogation that took place despite TDCJ’s failure to
give the warnings that the Texas Code of Criminal Procedure and Miranda require.  See Tex. Code Crim. Proc. Ann. art. 38.22; Miranda v. Arizona, 384
U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966).

We review the trial court’s determination of admissibility under an
abuse-of-discretion standard.  Montgomery
v. State, 810 S.W.2d 372,
379 (Tex. Crim. App. 1990); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000, pet.
ref’d).  A trial court has wide
discretion in determining the admissibility of evidence; we do not disturb its
ruling as long as it is “within the zone of reasonable disagreement.”  Montgomery, 810 S.W.2d at 391.  A
trial court’s ruling falls within this zone if the record and the law
applicable to the case reasonably support it. 
See Willover v. State,
70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The procedural safeguards of Miranda apply to
custodial interrogations by law enforcement officers or their agents. Wilkerson
v. State, 173 S.W.3d 521,
527 (Tex. Crim. App. 2005).  State
employment does not alone, however, make a person an agent of the state for the
purpose of defining a custodial interrogation. Id. at 528.  Different types of state employees serve
different roles. Id.  It is law
enforcement’s job to investigate crimes, arrest perpetrators, and gather
evidence for a possible prosecution. Id. 
Not all government workers must be ready to administer Miranda warnings or comply with the
procedural requirements of Article 38.22. Id.  The ultimate inquiry is whether the
custodial interview was “conducted (explicitly or implicitly) on behalf of the
police for the primary purpose of gathering evidence or statements to be used
in a later criminal proceeding against the interviewee[.]” Id. at 531.  The Texas Court
of Criminal Appeals has recognized that Miranda
is inapplicable to questioning by medical personnel. Id. at 528.

Musgrove argues that TDCJ officers placed him in
“crisis management” confinement under harsh conditions after the laundry room
incident, and that this increased level of confinement constituted custody in a
situation in which officers are investigating a crime involving an inmate.  See
Carter v. State, 309 S.W.3d 31, 35–36
(Tex. Crim. App. 2010).  Musgrove,
however, made his statement to a physician’s assistant in connection with an
inpatient mental health evaluation.  Parker
testified that she conducted her evaluation as part of the patient intake
process.  In response to Parker’s
question about why Musgrove had come to the mental health facility, he
volunteered that he was depressed and had used pepper spray on a TDCJ officer
in an attempt to kill himself.  Nothing
in the record indicates that Parker took Musgrove’s statement for the purpose
of gathering evidence for a criminal proceeding.  

Accordingly, the evidence supports the trial court’s
implied finding that Parker acted neither as a law enforcement agent, nor at
the behest of law enforcement investigation the offense.  The record supports the conclusion that
Parker conducted an initial psychological evaluation to determine his mental
health status and the proper treatment for his problems, not to obtain
information for a criminal investigation. 
See Berry v. State, 233 S.W.3d
847, 854–55 (Tex. Crim. App. 2007) (holding that CPS foster-care supervisor,
who questioned defendant for purposes of finding proper ‘placement’ of
defendant’s children, was not “an agent of law enforcement”).  We hold that the trial court did not abuse
its discretion in admitting Musgrove’s medical history into evidence as a part
of Musgrove’s medical records.  See id. at 533. 

Presence of Officers in Courtroom

          Musgrove
asserts that the trial court erred in denying his motion for new trial because the
presence of extra guards in the courtroom inherently prejudiced the jury
against him.  

          We review a trial court’s ruling on a motion for new trial
using an abuse-of-discretion standard.  Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App.
2007).  A
criminal defendant has a constitutional right to be tried by impartial,
indifferent jurors whose verdict must be based upon the evidence developed at
trial.  Howard v. State, 941 S.W.2d 102, 117 (Tex. Crim. App.
1996).  The
presence of guards in a courtroom has the potential to violate that right by “creat[ing]
the impression in the minds of the jury that the defendant is dangerous or
untrustworthy.”  Holbrook v. Flynn, 475 U.S. 560, 569, 106 S. Ct. 1340, 1346–47
(1986).  To prevail on a claim of
prejudice resulting from external influence on the jurors, however, a defendant
must show either actual or inherent prejudice. Howard, 941 S.W.2d at 117.  To determine inherent
prejudice, we look to whether “an unacceptable risk is presented of
impermissible factors coming into play.” 
Holbrook, 475 U.S. at 570, 106
S. Ct. at 1346–47.  Inherent prejudice
rarely occurs and “is reserved for extreme situations.” Howard, 941 S.W.2d at 117.

          Here, the
record reflects that officers were present in the courtroom during trial
(although a precise number appears only in Musgrove’s affidavit).  According to the trial court, two officers appeared
in uniform.  Musgrove does not complain
about any actions by the officers present, nor does he complain that any of the
officers engaged in conduct that influenced the jury.  The presence of officers does not constitute
inherent prejudice.  See Holbrook, 475 U.S. at 571, 106 S. Ct. at 1347 (holding
that supplementing customary courtroom security force by four uniformed state
troopers sitting in first row of spectator’s section did not deprive defendant
of constitutional right to fair trial); see also Howard, 941 S.W.2d at
117 (holding that no inherent prejudice existed where twenty uniformed police
officers were spectators in back of courtroom in trial of defendant for murder
of state trooper); Davis v. State, 223
S.W.3d 466, 474 (Tex. App.—Amarillo 2006, pet. ref’d, untimely filed) (holding
that no inherent prejudice existed where eight uniformed officers were present in
the courtroom). 
We hold that the officers’ presence at trial did not present an
unacceptable risk of inherent prejudice, in light of the trial court’s security
concerns, and in the absence of any evidence that they attempted to influence
the jury by conduct or expression.

Conclusion

We hold that the trial court did not
abuse its discretion in admitting Musgrove’s statements to medical personnel or
in denying his motion for a new trial. We therefore affirm the judgment of the
trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Huddle.

Do not publish.  Tex.
R. App. P. 47.2(b).